UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LOCAL 3599, NYC DEPT. OF
ENVIRONMENTAL PROTECTION
TECHNICAL PROFESSIONAL
EMPLOYEES, NATHANIEL HENDRICKS,
JAMES MANGARILLO, THOMAS GANZ,
PUJA SAHA and PHILIP ARMSTRONG,

                    Plaintiffs,

              -against-

THE CITY OF NEW YORK, NEW YORK
CITY DEPARTMENT OF
ENVIRONMENTAL PROTECTION and ZOE
ANN CAMPBELL,

                    Defendants.

23-CV-1035 (JGLC)

**OPINION AND ORDER**

---

JESSICA G. L. CLARKE, United States District Judge:

Local 3599, NYC Dept. of Environmental Protection Technical Professional Employees

("Local 3599" or the "Union") and Nathaniel Hendricks, James Mangarillo, Thomas Ganz, Puja

Saha and Philip Armstrong (collectively, the "Individual Plaintiffs," and together with the Union,

the "Plaintiffs") bring this action against the City of New York (the "City"), the New York City

Department of Environmental Protection ("DEP") and Zoe Ann Campbell (collectively, the

"Defendants"), alleging that Defendants have unlawfully failed to pay Individual Plaintiffs the

correct salary corresponding with their job titles due to their membership in the Union. Plaintiffs

bring claims pursuant to 42 U.S.C. § 1983 for (1) violations of substantive and procedural due

process and selective enforcement under the Fourteenth Amendment, (2) retaliation based on free

association under the First Amendment and (3) breach of contract or quasi-contract. ECF No. 27

("First Amended Complaint" or "Complaint" or "FAC") ¶¶ 49–76. Pending before the Court is

Defendants' motion to dismiss the First Amended Complaint. ECF No. 32 (the "Motion" or

"Mot."). For the reasons stated herein, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

The facts are set forth as alleged in the First Amended Complaint. The Union is a New York state unincorporated association and municipal labor union affiliated with District Council 37, AFSCME, AFL-CIO, and the Individual Plaintiffs are all members of the Union. FAC ¶¶ 3, 7. The Union represents approximately three hundred DEP technical and professional employees who work throughout the upstate communities of the New York City watershed. *Id*. ¶ 16.

On July 29, 2020, Plaintiff Hendricks was appointed to the position of Supervisor (Project Review) Associate Project Manager Level 3, which carried with it a mandatory minimum salary of $103,631. *Id*. ¶¶ 18–19. Defendants have failed and refused to process the necessary paperwork for Plaintiff Hendricks to receive the appropriate rate of pay for the higher position. *Id*. ¶ 20.

On July 8, 2021, Plaintiff Mangarillo was appointed to the position of Deputy Chief of Reservoir Operations, Administrative Project Manager (NM), which carried with it a mandatory minimum salary of $110,000. *Id*. ¶¶ 21–22. From July 8, 2021 until February 15, 2023, Defendants failed and refused to process the necessary paperwork for Plaintiff Mangarillo to receive the appropriate rate of pay for the higher position. *Id*. ¶ 23.

On November 23, 2021, Plaintiff Ganz was appointed to the position of Downsville Regional Engineer and Watershed Agriculture Council Program Manager, which carried with it a mandatory minimum salary of $103,631. *Id*. ¶¶ 24–25. Defendants have failed and refused to process the necessary paperwork for Plaintiff Ganz to receive the appropriate rate of pay for the higher position. *Id*. ¶ 26.

Plaintiff Saha was offered an open position related to the Rondout-West Branch Tunnel project in February of 2022. *Id.* ¶¶ 37, 39. When job positions related to this project were posted in February 2022, Defendants had completed the paperwork and secured funding approval so that new hires could immediately be paid the correct salary. *Id.* ¶¶ 37–38. However, Defendants retracted Plaintiff Saha's promotion when they learned that Plaintiff Saha was a member of the Union. *Id.* ¶ 40. On May 3, 2022, Defendants hired Plaintiff Saha to the same position they had previously retracted, which appears to carry with it a mandatory minimum salary of $69,045.[1] *Id.* ¶ 28, 43. This time, Defendants no longer had pre-approved funding for the position. *Id.* From May 3, 2022 until January 22, 2023, Defendants failed and refused to process the necessary paperwork for Plaintiff Saha to receive the appropriate rate of pay for her position. *Id.* ¶¶ 29, 43.

On April 25, 2022, Plaintiff Armstrong was appointed to the position of Research Scientist Level 2 (JVN 510097), which carried with it a mandatory minimum salary of $86,830. *Id.* ¶¶ 30–31. Defendants failed to process the necessary paperwork to ensure that Plaintiff Armstrong would be paid the proper rate of pay until May 31, 2022. *Id.* ¶ 32.

In sum, every Individual Plaintiff was promoted from one Union-represented position to a higher Union-represented position with a higher salary. *Id.* ¶¶ 18–32. Defendants intentionally appointed the Individual Plaintiffs to the new job positions, knowing that they would not pay the Individual Plaintiffs the promised rate of pay due to Individual Plaintiffs' membership in the Union. *Id.* ¶¶ 34, 45. Defendants failed and refused to complete the necessary paperwork that would allow Individual Plaintiffs to receive their higher salaries, enabling Defendants to receive the benefits of Individual Plaintiffs' labor without paying the commensurate salaries. *Id.* ¶¶ 20,

---

[1] It is unclear whether $69,045 was the salary for Plaintiff Saha's prior position or for the higher position to which she was promoted.

23, 26, 29, 32–34. In contrast, for non-Union employees, including those hired for the thirty-nine positions DEP posted in February 2022, there was no delay in processing the necessary paperwork such that those hires would be paid the proper salary. *Id*. ¶¶ 36, 42.

**LEGAL STANDARD**

The Court sets forth the legal standard governing the motion to dismiss.

## I.      **Motion to Dismiss**

Defendants move to dismiss pursuant to "Rule 12(b)" of the Federal Rules of Civil Procedure. ECF Nos. 32, 34. Based on the substance of the motion, the Court construes Defendants as seeking dismissal for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id*. at 679.

4

**DISCUSSION**

The Court first determines what materials attached to Defendants' moving papers – that were not included in or appended to the Complaint – will be considered at this stage. Next, the Court finds that failure to exhaust contractual or state court (Article 78) remedies does not preclude Plaintiffs' claims. Turning to the merits, the Court finds that Plaintiffs' substantive due process and selective enforcement claims are subsumed by Plaintiffs' more specific constitutional claims, but that Plaintiffs have stated procedural due process and First Amendment retaliation claims (with the exception of Plaintiff Armstrong, who experienced too short a processing delay to sustain a constitutional claim). However, Plaintiffs' *Monell* claims against the City and constitutional claims with respect to Defendant Campbell (based on personal involvement for Section 1983 purposes) are dismissed without prejudice, and the Court grants Plaintiffs leave to file a second amended complaint to address the pleading deficiencies identified herein.

**I.   Consideration of Materials Outside the Complaint**

Typically, "[i]n deciding a motion under Rule 12(b)(6), the Court may consider only the facts stated on the face of the complaint, and in documents appended to the complaint or documents incorporated by reference in the complaint." *AIM Int'l Trading, L.L.C. v. Valcucine S.p.A.*, No. 02-CV-1363 (PKL), 2003 WL 21203503, at *3 (S.D.N.Y. May 22, 2003) (citing *Schnall v. Marine Midland Bank*, 225 F.3d 263, 266 (2d Cir. 2000)). Where a party on a motion to dismiss introduces documents outside the pleadings, the Court must typically "either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment . . . ." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000)

(quoting *Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir. 1988)) (internal quotation marks omitted).

The Court "may nevertheless consider" a document outside of the complaint "where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). "[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a prospectus upon which it solely relies and which is integral to the complaint, the defendant may produce" the same in its motion to dismiss. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991); *see also Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) (cleaned up) ("Where a plaintiff has relied on the terms and effect of a document in drafting the complaint, and that document is thus integral to the complaint, we may consider its contents even if it is not formally incorporated by reference.").

Here, Defendants submitted four documents in connection with their moving papers that were not attached to the Complaint: (1) the collective bargaining agreement between the City and District Council 37, AFSCME, AFL-CIO; (2) a 2021–2026 memorandum of agreement between the same; (3) copies of administrative grievances filed by the Individual Plaintiffs; and (4) a Stipulation of Settlement signed by Plaintiff Saha. *See* ECF No. 33; ECF No. 33-1 (the "Collective Bargaining Agreement" or "CBA"); ECF Nos. 33-2-4.

Courts in this Circuit, when considering a motion to dismiss, have found the applicable collective bargaining agreement either integral to the complaint or incorporated by reference where the plaintiff's claims rely heavily on the terms and effects of the agreement. *See Cruz v. United Auto. Workers Union Local 2300*, No. 18-CV-48 (GTS), 2019 WL 3239843, at *15

(N.D.N.Y. July 18, 2019); *Burns v. Rovella*, No. 19-CV-553 (JCH), 2020 WL 12863774, at *8 n.10 (D. Conn. Feb. 21, 2020); *Phillips v. Orleans Cnty.*, No. 18-CV-752 (CR), 2019 WL 3088051, at *5 (W.D.N.Y. July 15, 2019). Here, "Individual Plaintiffs' new salaries" – which the Complaint recites to the dollar figure, and the delay or withholding of which is the basis for Plaintiff's claims – are "mandated by the CBA." ECF No. 41 ("Opp.") at 19; FAC ¶¶ 19, 22, 25, 28, 31. The CBA is also the instrument through which the City recognizes the Union, membership in which is the reason Individual Plaintiffs state they were treated differently than non-Union employees. Accordingly, the Court will consider the CBA. This does not require the Court to convert the motion to dismiss into a motion for summary judgment. *See Chambers*, 282 F.3d at 153–54 (finding that the district court on a 12(b)(6) motion properly considered, without converting the motion into one for summary judgment, contracts not included in plaintiff's pleadings that were "integral to the Amended Complaint"); *Cortec Indus., Inc.*, 949 F.2d at 48 (holding that the district court was entitled to consider a written agreement defendant attached to a motion to dismiss without converting the motion to one for summary judgment).

However, the Court finds no basis, and Defendants provide none,[2] for finding the other three extrinsic documents incorporated by reference or integral to the Complaint. Accordingly, the Court declines to consider those documents (ECF Nos. 33-2–4) with respect to the Motion. Even if the Court considered those documents, Defendants do not purport that the release of claims pursuant to the Stipulation of Settlement with Plaintiff Saha would fully encompass, and therefore dispose of, Plaintiff Saha's constitutional claims here. And whether Individual Plaintiffs

---

[2] Defendants recite the standard for consideration of material outside the complaint on a motion to dismiss but provide no reason why the standard is met here. Mot. at 3 n.1.

have filed administrative grievances does not affect the Court's determination as a matter of law

as to whether exhaustion of contractual or Article 78 remedies is required.

## II.     Exhaustion of Contractual and Article 78 Remedies

Defendants argue in their motion (but appear to abandon by omission in reply) that

Plaintiffs' claims should be dismissed for failure to exhaust the grievance procedure set forth in

the CBA. Mot. at 7. The CBA provides, in pertinent part:

> The term "Grievance" shall mean:
>
> a.  A dispute concerning the application or interpretation of the terms of this
>     Agreement;
>
> b.  A claimed violation, misinterpretation or misapplication of the rules or
>     regulations, ***written*** policy or orders of the Employer applicable to the agency
>     which employs the grievant affecting terms and conditions of employment;
>     provided, disputes involving the Personnel Rules and Regulations of the City
>     of New York . . . shall not be subject to the grievance procedure or arbitration;
>
> c.  A claimed assignment of Employees to duties substantially different from
>     those stated in their job specifications;

CBA, Art. VI, § 1. The CBA provides a four-step grievance and arbitration procedure through

which employees can challenge "grievable" issues as defined above. This procedure is "the

exclusive remedy for the resolution of disputes defined as 'grievances.'" *Id*., Art. VI, § 14.

Exhaustion of contractual remedies is not required here because the claims set forth in

Complaint are not "grievable" within the meaning of the CBA. This is not an out-of-title work

case that would fall within the purview of "[a] claimed assignment of Employees to duties

substantially different from those stated in their job specifications." *Id*., Art. VI, § 1(c). Plaintiffs

allege that they are "performing the correct work under the correct title," but that Defendants

have engaged in "unconstitutionally discriminatory delay and withholding of their correct

salary." Opp. at 3. Defendants also do not submit that Plaintiffs' claims are "grievable" disputes

regarding the application or interpretation of the terms of the CBA or the misapplication of a

workplace rule. *See* CBA, Art. VI, § 1(a)–(b). Accordingly, there is no "clear and unmistakable" waiver of Plaintiffs' rights to pursue their claims here where "Plaintiff[s'] claim is not that Defendants violated the CBA—it is that they discriminated against [them] on the basis of [Union membership]," and the "CBA does not specify that [such] claims are subject to its grievance procedure." *Mansaray v. Kraus Sec. Sys.*, No. 20-CV-1415 (RA), 2021 WL 183275, at *3 (S.D.N.Y. Jan. 19, 2021).

Defendants also argue that Plaintiffs lack standing to pursue their breach of contract or quasi-contract claim (the "Breach of Contract" claim) – as distinguished from the constitutional claims – because Plaintiffs did not exhaust the CBA procedures or initiate an Article 78 proceeding for state court review thereof prior to bringing this suit. Mot. at 22–24; ECF No. 44 ("Reply") at 8–9. "Under New York law, when an employer and a union enter into a collective bargaining agreement that creates a grievance procedure, an employee subject to the agreement may not sue the employer directly for breach of that agreement but must proceed, through the union, in accordance with the contract." *Lore v. City of Syracuse*, 670 F.3d 127, 151 (2d Cir. 2012) (quoting *Bd. of Educ. v. Ambach*, 517 N.E.2d 509, 512 (N.Y. 1987)) (internal quotation marks omitted). Here, the FAC could be read to imply that Plaintiffs are asserting a claim for breach of the CBA or breach of another contract or "quasi-contract" between Plaintiffs and Defendants. FAC ¶¶ 72–73; Opp. at 24. To the extent Plaintiffs' Breach of Contract claim asserts a claim for breach of the CBA itself, such issues are "grievable" under the CBA and may not be brought absent a demonstration of exhaustion of the CBA grievance procedure. *See Lore*, 670 F.3d at 151; CBA, Art. VI, §§ 1(a), 14.

To the extent Individual Plaintiffs assert a breach of the alleged contractual agreements that Individual Plaintiffs entered with DEP by means of offer and acceptance to perform services

at a particular rate of pay, those claims are not covered under the CBA.[3] Therefore, they do not require exhaustion of the CBA grievance procedure. Only if Plaintiffs are asserting a breach of the CBA is exhaustion required.

Defendants argue that Plaintiffs were required to bring their Breach of Contract claim in an Article 78 proceeding before instituting this action. New York's Civil Practice Law and Rules ("CPLR") Article 78 provides a specific and exclusive remedy where a question raised by a party goes to "whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed." CPLR § 7803(3). "Article 78 of the New York Civil Practice Law, an amalgam of the common law writs of certiorari to review, mandamus, and prohibition," *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 881 (2d Cir. 1996), "provides the mechanism for challenging a specific decision of a state administrative agency." *Campo v. N.Y. City Emp. Ret. Sys.*, 843 F.2d 96, 101 (2d Cir. 1988) (internal citation omitted).

"To determine whether Article 78 applies to a given dispute, a reviewing court must 'examine the substance of the action to identify the relationship out of which the claim arises and the relief sought.'" *Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, No. 10-CV-8002 (RPP), 2011 WL 3427138, at *14 (S.D.N.Y. Aug. 5, 2011), *aff'd*, 678 F.3d 184 (2d Cir. 2012) (quoting *Solnick v. Whelan*, 401 N.E.2d 190, 229 (N.Y. 1980)). "The New York courts have held

---

[3] Although Plaintiffs provided minimal detail supporting the alleged breach of contract claim, "[c]ourts [] generally recogniz[e] that relatively simple allegations will suffice to plead a breach of contract claim even post-*Twombly* and *Iqbal*." *TOA Sys., Inc. v. Int'l Bus. Machines Corp.*, No. 18-CV-10685 (VB), 2019 WL 5693388, at *2 (S.D.N.Y. Nov. 4, 2019) (quoting *Comfort Inn Oceanside v. Hertz Corp.*, No. 11-CV-1534 (JG), 2011 WL 5238658, at *7 (E.D.N.Y. Nov. 1, 2011)).

that article 78 is inapplicable to contract actions against the state government that seek damages as the principal remedy. It is just as clear, however, that a successful article 78 proceeding for reinstatement [of employment] is a prerequisite to a claim for damages by a discharged public employee." *Finley v. Giacobbe*, 79 F.3d 1285, 1291–92 (2d Cir. 1996) (internal citations omitted). In New York, claims against a public employer for withheld salary – unlike those contesting a decision to terminate employment – may be brought without a prior Article 78 proceeding. *Id*. at 1292–93; *see also Simpri v. City of New York*, No. 00-CV-6712 (SAS), 2003 WL 23095554, at *9 (S.D.N.Y. Dec. 30, 2003) (Article 78 not the proper vehicle for breach of contract claim seeking "money damages for injuries allegedly suffered as a result of defendant's breach of its contractual obligations" to promote plaintiff). Article 78 is not the exclusive vehicle for relief where plaintiff need not first seek reinstatement and where plaintiff "does not seek to compel any action by Defendant, and instead seeks monetary damages for breach of contract . . . ." *Papaspiridakos v. Educ. Affiliates, Inc.*, No. 10-CV-5628 (RJD), 2013 WL 4899136, at *2 (E.D.N.Y. Sept. 11, 2013), *aff'd*, 580 F. App'x 17 (2d Cir. 2014).

Here, there is no allegation that Defendants terminated Individual Plaintiffs' employment; to the contrary, Individual Plaintiffs maintain they have remained employed by DEP while performing work in new job titles without the correct salary. And this is not a case in which a challenge to an administrative determination to terminate employment masquerades as a "contract" claim to avoid the four-month statute of limitations for Article 78 proceedings. *See Martinez v. O'Leary*, No. 11-CV-1405 (ENV), 2013 WL 3356983, at *4 (E.D.N.Y. July 3, 2013). Accordingly, because Plaintiffs seek monetary damages rather than to compel state action, and because Plaintiffs were never discharged from employment, and thus need not establish a right to reinstatement, institution of an Article 78 proceeding is not a prerequisite to bringing claims for

breach of the individualized contractual agreements (not the CBA) that Individual Plaintiffs allegedly entered with DEP.

## III.    Substantive Due Process

The Court now turns to the Motion with respect to the merits of Plaintiffs' claims. It is well established that "where another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process." *Hu v. City of New York*, 927 F.3d 81, 104 (2d Cir. 2019) (internal citation omitted). "As a result, the plaintiffs' substantive Due Process allegations are subsumed by their more particular allegations" of First Amendment violations. *Id.*; *see also Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005) (holding that the plaintiff's substantive due process claim was subsumed by the alleged First Amendment and Equal Protection violations). Accordingly, the Court dismisses Plaintiffs' substantive due process claim.

## IV.    Procedural Due Process

"In a § 1983 suit brought to enforce procedural due process rights, a court must determine (1) whether a property interest is implicated, and, if it is, (2) what process is due before the plaintiff may be deprived of that interest." *Progressive Credit Union v. City of New York*, 889 F.3d 40, 51 (2d Cir. 2018) (internal citation omitted); *see also Nnebe v. Daus*, 931 F.3d 66, 80 (2d Cir. 2019). Here, Individual Plaintiffs allege that Defendants deprived them of a property interest in their proper salaries without constitutionally adequate process. Opp. at 12.

The Court must first determine whether Individual Plaintiffs have established that the challenged conduct deprived them of a constitutionally protected property interest. *See Ace Partners, LLC v. Town of E. Hartford*, 883 F.3d 190, 195 (2d Cir. 2018). "Property interests are

not created by the Constitution; rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002) (internal citation and quotation marks omitted). "Independent source[s]" sufficient to establish such an entitlement include statutes, regulations, collective bargaining agreements, employment contracts, rules and policies. *Id*. at 313–14 (statutes, regulations, collective bargaining agreements); *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577–78 (1972) (statutes, rules, policies); *Atterbury v. U.S. Marshals Service*, 805 F.3d 398, 407 (2d Cir. 2015) (employment contracts). "In determining whether a particular property interest rises to the level of constitutional protection," a court must also "weigh the importance to the holder of the right." *Ciambriello*, 292 F.3d at 313 (internal citation and quotation marks omitted).

Here, the CBA and New York state law establish a constitutionally protected property interest for Individual Plaintiffs, public employees, to be paid their proper salaries in a timely manner. The Second Circuit has held that contractual rights under a collective bargaining agreement provide the basis for such constitutionally protected property interests. *See id*. at 312–13 (county employee who was demoted two years after receiving a promotion had a property interest in his promotion because the collective bargaining agreement provided employee could not be demoted except for just cause); *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 208, 212–13 (2d Cir. 2003) (tenured teacher who was terminated as result of budgetary cutbacks had a property interest in her reappointment to any vacant position for which she was qualified based on contractual right under collective bargaining agreement). This includes the right to a salary mandated by the CBA. *Adams v. Suozzi*, 448 F. Supp. 2d 448, 453 (E.D.N.Y. 2006), *rev'd*

*on other grounds, vacated in part*, 517 F.3d 124 (2d Cir. 2008); *cf. McRae v. New York State Thruway Auth.*, 687 F. App'x 22, 23 (2d Cir. 2017) (quoting *Leventhal v. Knapek*, 266 F.3d 64, 77 (2d Cir. 2001)) ("Discretionary salary increases are not a form of property protected by the Constitution against deprivation without due process of law . . ."). Thus, the Court finds that Individual Plaintiffs "have a protectable property interest in the salary that they have earned from the [City] under [the CBA]." *Adams*, 448 F. Supp. 2d at 453 .

Furthermore, New York state law supports Individual Plaintiffs' property interest in their correct salaries. *See Nieves v. Cnty. of Orange*, No. 04-CV-9128 (SCR), 2007 WL 2154183, at *8 (S.D.N.Y. July 23, 2007) (cleaned up) ("In New York, the Fourteenth Amendment protects a property interest in an employee's particular position or rank, in their salary, and retirement benefits."). Individual Plaintiffs are also entitled to be paid their CBA-mandated salaries within a reasonable amount of time. *See Kraebel v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 959 F.2d 395, 405 (2d Cir. 1992) (internal quotation marks omitted) ("[I]mplicit in the conferral of an entitlement is a further entitlement, to receive the entitlement within a reasonable time."). As such, Individual Plaintiffs have sufficiently alleged a property interest.

Plaintiffs' procedural due process claim is based on Defendants' alleged failure to process the necessary paperwork such that Individual Plaintiffs could timely receive the appropriate rate of pay for their new positions. The Second Circuit has held that the state's "delay in processing" constitutionally protected entitlements "can become so unreasonable as to deny due process." *Id.*. "Where procedural due process challenges to delayed processes have succeeded, the delays were typically caused by specified administrative procedures or policies, rather than mere negligence or inaction." *Furman v. Rich*, No. 19-CV-2748 (EK), 2020 WL 3975469, at *5 (E.D.N.Y. July 14, 2020) (collecting cases). "Although no bright-line rule exists for determining when a delay is so

burdensome as to become unconstitutional," such delays are unconstitutional where they are "egregious and without any rational justification." *Kraebel*, 959 F.2d at 405. "[A] delay amounts to a due process violation only where it renders the prescribed procedures meaningless in relation to the private interest at stake." *Kuck v. Danaher*, 600 F.3d 159, 164 (2d Cir. 2010).

"Whether a delay amounts to a procedural due process violation is a matter of context," driven by the three *Mathews* factors articulated by the Supreme Court. *Dukes v. New York City Employees' Ret. Sys.*, 361 F. Supp. 3d 358, 371 (S.D.N.Y. 2019) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). The *Mathews* factors are "(1) the private interest at stake; (2) the risk of an erroneous deprivation of that interest through the procedures used and the probable value (if any) of alternative procedures; [and] (3) the government's interest, including the possible burdens of alternative procedures." *Kuck*, 600 F.3d at 164 (quoting *O'Connor v. Pierson*, 426 F.23d 187, 197 (2d Cir. 2005)).

Regarding the first factor, the Court finds that each Individual Plaintiff's "interest in receiving her salary, on which her livelihood depends," in accordance with the salaries mandated by the CBA, is strong. *McCreery v. Babylon Union Free Sch. Dist.*, 827 F. Supp. 136, 139 (E.D.N.Y. 1993).

The second factor also weighs strongly in favor of Plaintiffs. Drawing all inferences in Plaintiffs' favor, and thus assuming that Defendants failed to process Individual Plaintiffs' paperwork for lengthy periods in order to deprive Individual Plaintiffs of their due salaries, erroneous deprivation was the very purpose of Defendants' scheme.

The third factor also weighs strongly in favor of Plaintiffs at this stage of the litigation. Defendants have not articulated an important government interest at stake and offer no explanation whatsoever attempting to justify their delay. Opp. at 11. Moreover, Plaintiffs have

alleged that "Defendants' delay was the product of [a] specific policy or procedure[]" – rather than mere negligence or inaction – which is a hallmark of meritorious procedural due process challenges to delayed processes. *See Furman*, 2020 WL 3975469, at *5.

Based on the *Mathews* factors, the Court finds that all Plaintiffs except Plaintiff Armstrong state a procedural due process claim with respect to Defendants' processing time. The Court finds the less than two-month processing delay suffered by Plaintiff Armstrong insufficient to state a procedural due process claim. *See Isaacs v. Bowen*, 865 F.2d 468, 477 (2d Cir. 1989) ("Regrettably, delay is a natural concomitant of our administrative bureaucracy."). The other Individual Plaintiffs suffered longer delays: Plaintiff Hendricks experienced nearly a three year delay (from July 29, 2020 to July 10, 2023, FAC ¶¶ 18–20); Plaintiff Mangarillo experienced a nineteen month delay (from July 8, 2021 until February 15, 2023, FAC ¶¶ 21–23); Plaintiff Ganz experienced nearly a twenty month delay (from November 23, 2021 to July 10, 2023, ¶¶ 24–26); and Plaintiff Saha experienced an eight and a half month delay (from May 3, 2022 until January 22, 2023, ¶ 29). The Court finds it plausible that these longer intervals are "simply too long in light of the private interests at stake" and the lack of any articulated "clear state interest." *Kuck*, 600 F.3d at 164.

Defendants argue that the availability of an Article 78 proceeding as a post-deprivation remedy satisfies procedural due process. Mot. at 14–17; Reply at 3–5. However, assuming Article 78 post-deprivation procedures were available here, Plaintiffs allege a deprivation pursuant to an established *de facto* state procedure – rather than "random and unauthorized" acts – which requires constitutionally adequate predeprivation process. *See Teichmann v. New York City Employees' Ret. Sys.*, No. 21-CV-5082 (LGS), 2022 WL 4237110, at *5 (S.D.N.Y. Sept. 14, 2022) (collecting cases) ("[T]he backstop of [Article 78] judicial remedies does not excuse a

complete lack of predeprivation process."); *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996) (citing *Hudson v. Palmer*, 468 U.S. 531, 532 (1984)) ("When the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, ipso facto, satisfy due process.").

Plaintiffs have alleged that the City delayed payment of Individual Plaintiffs' proper salaries pursuant to a practice that was neither random nor unauthorized. Thus, adequate pre-deprivation process was required. *See Dukes*, 361 F. Supp. 3d at 373–74 (finding that allegation regarding lengthy delay in processing claims was a challenge to the state's "established procedures" rather than "random and unauthorized acts" in procedural due process analysis); *King v. New York City Emps. Ret. Sys.*, 212 F. Supp. 3d 371, 400 (E.D.N.Y. 2016) (internal citation omitted) ("Where a plaintiff alleges a deprivation pursuant to an established state procedure, the state can predict when it will occur and is thus in the position to provide a predeprivation hearing. Under these circumstances, the availability of a postdeprivation procedure, such as an article 78 proceeding, does not itself satisfy due process requirements."). Because no process was provided prior to depriving Individual Plaintiffs of their proper salaries for substantial periods – which Defendants offer no reason for delaying or withholding – Plaintiffs Hendricks, Mangarillo, Ganz and Saha have stated a procedural due process claim. This count is dismissed only with respect to Plaintiff Armstrong, who suffered too short a processing delay to state a procedural due process claim.

## V.    First Amendment Retaliation

To establish that one suffered retaliation in violation of the First Amendment, a plaintiff must plausibly allege that "(1) his or her speech or conduct was protected by the First

Amendment; (2) the defendant took an adverse action against him or her; and (3) there was a causal connection between this adverse action and the protected speech." *Montero v. City of Yonkers, New York*, 890 F.3d 386, 394 (2d Cir. 2018) (quoting *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011)). The Court addresses each element in turn.

### A.  Protected First Amendment Activity

To establish that a public employee's speech or First Amendment associational conduct is protected from retaliation, it must first be shown that the employee "spoke" on a matter of "public concern." *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015); *see also Lynch v. Ackley*, 811 F.3d 569, 577 (2d Cir. 2016) (internal citation and quotation marks omitted) ("The Supreme Court has long recognized that the First Amendment affords a degree of protection to public employees to exercise the right of free speech without risk of retaliation by the State employer if the employee's speech in question is on matters of public interest."). "The right to free association is a right closely allied to freedom of speech and a right which, like free speech, lies at the foundation of a free society . . . . Included in this right to free association is the right of employees to associate in unions." *State Emp. Bargaining Agent Coal. v. Rowland*, 718 F.3d 126, 132 (2d Cir. 2013) (internal citations and quotation marks omitted). "It cannot be questioned that the First Amendment's protection of speech and associational rights extends to labor union activities." *Id*. (internal citation and quotation marks omitted). The Supreme Court has suggested that "taking steps to prohibit or discourage union membership or association [] would likely infringe on First Amendment rights." *Id*. (quoting *Smith v. Arkansas State Highway Emp., Loc. 1315*, 441 U.S. 463, 466 (1979)). The heightened scrutiny standard that the Supreme Court set forth in *Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990) governs employment decisions based on union membership, including cases where, as here, the issue is "whether

[plaintiffs] could be retaliated against based on their union affiliation (or non-affiliation)," rather than based on their "expression of views." *Id*.

Individual Plaintiffs' right to freely associate with the Union is clearly protected by the First Amendment. However, Defendants argue that Individual Plaintiffs' union membership does not, by itself, touch on a matter of "public concern" as required for public employees to state a First Amendment retaliation claim. Mot. at 20; Reply at 5. "Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record." *Lewis v. Cowen*, 165 F.3d 154, 163 (2d Cir. 1999) (citing *Connick v. Myers*, 461 U.S. 138, 147–48 and n.7 (1983)). Whether union membership, by itself, touches on a matter of public concern for the purposes of a First Amendment retaliation claim is an open question in the Second Circuit. *See Moore v. Sequeira*, No. 21-CV-787 (VAB), 2023 WL 5334363, at *8 (D. Conn. Aug. 18, 2023); *Forman v. New York City Dep't of Educ.*, No. 19-CV-8156 (JPC), 2022 WL 912130, at *9 n.10 (S.D.N.Y. Mar. 29, 2022). Some district courts in the Second Circuit have found that union membership is *per se* a matter of public concern. *See Payson v. Bd. of Educ. of Mount Pleasant Cottage Sch., USFD*, No. 14-CV-9696 (JCM), 2017 WL 4221455, at *16 (S.D.N.Y. Sept. 20, 2017) (collecting cases). While the Second Circuit has stated in dicta that "retaliation against public employees solely for their union activities violates the First Amendment" and "raises a public concern," *Clue v. Johnson*, 179 F.3d 57, 60–61 (2d Cir. 1999), the Second Circuit has since clarified that it "obviously did not mean that all activities undertaken through a union necessarily become matters of public concern merely by virtue of their collateral connection to the union." *Lynch v. Ackley*, 811 F.3d 569, 582 (2d Cir. 2016). Nonetheless, "in the case of employment in a public agency, which renders service to the general public, it is rarely difficult

for a plaintiff to construct an argument that the dispute is a matter of public concern, either because it relates to the delivery of services to the public, or because it invokes basic aspects of the right to unionization." *Id.* at 581. This is especially true because labor unions are historically associated with political advocacy; public employee unions in particular act directly on matters of public concern because the compensation of public employees bears "directly on the overtly political issue of state budgets, including the appropriate levels of public expenditure and taxation." *Rowland*, 718 F.3d at 134 n.7.

The Second Circuit has held that disputes that "invoke[] basic aspects of the right to unionization" touch on matters of "public concern." *Lynch*, 811 F.3d at 581. Such matters stand in contrast to labor versus management disputes about the terms and conditions of employment that "have a strong flavor of 'personal grievance" and bear only a "collateral connection to the union." *Id*. Retaliation solely based on public union membership "invokes basic aspects of the right to unionization" and thus touches on a matter of public concern. *Id*. Public employers may not "retaliate[] against [employees] *because of* [their] union membership." *Id*. at 583 and n.14 (citing *Rowland*, 718 F.3d at 130) (emphasis in original). Accordingly, because they allege retaliation solely based on Union membership, Plaintiffs satisfy the first element of a First Amendment retaliation claim.

### B. Adverse Action

Regarding the second prong, Defendants do not contest that Plaintiffs have sufficiently pled an adverse action. An "adverse action" means any action by a defendant that would deter a person of ordinary firmness from exercising his or her First Amendment rights. *See Heim v. Daniel*, 81 F.4th 212, 221 n.9 (2d Cir. 2023); *Connelly v. Cnty. of Rockland*, 61 F.4th 322, 325 (2d Cir. 2023). "An adverse employment action may include discharging, refusing to hire,

refusing to promote, demoting, reducing the pay, or reprimanding an employee." *Montero*, 890 F.3d at 401 (citing *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999)).

When a delay in payment of an employee's correct salary "is of such length that it rises to 'more than a mere inconvenience,' it may constitute an adverse employment action." *Dechberry v. New York City Fire Dep't*, 124 F. Supp. 3d 131, 148 (E.D.N.Y. 2015) (internal citation omitted); *see also Carter v. Potter*, No. 06-CV-3854 (JG), 2008 WL 1848639, at *4 (E.D.N.Y. Apr. 23, 2008) (noting that delay of over a year due to defendant's challenges to worker's compensation may rise to level of adverse employment action). While many delays do not rise to adverse employment actions, *see Moschetti v. New York City Dep't of Educ.*, No. 15-CV-3161 (KMK), 2018 WL 4759787, at *15 (S.D.N.Y. Sept. 28, 2018), *aff'd*, 778 F. App'x 65 (2d Cir. 2019) (collecting cases), the Court finds here that, accepting Plaintiffs' allegations as true, the deprivation of Individual Plaintiffs' proper salaries for at least nine months was more than a mere inconvenience and constitutes an adverse employment action. *Cf. Carter v. Potter*, No. 06-CV-3854 (JG) (LB), 2008 WL 1848639, at *4 (E.D.N.Y. Apr. 23, 2008) ("[C]laims [that] only allege a delay of only several months [] do not rise to the level of adverse employment actions."). Drawing all inferences in Plaintiffs' favor, Plaintiffs have alleged facts sufficient to "suggest that plaintiff's [proper] paychecks were purposefully withheld." *See Badrinauth v. Coll.*, No. 97-CV-3554 (RJD), 1999 WL 1288956, at *7 (E.D.N.Y. Nov. 4, 1999) (plaintiff did not suffer an adverse employment action when no evidence indicated purposeful delay in the transmittal of a paycheck).

Moreover, there is no argument that Plaintiffs' "own errors contribute[d] to delayed payment" such that Plaintiffs did not "endure[] an adverse employment action." *Miller v. New York City Health & Hosp. Corp.*, No. 00-CV-140 (PKC), 2005 WL 2022016, at *6 (S.D.N.Y.

Aug. 22, 2005), *aff'd sub nom. Miller v. New York City Health & Hosps. Corp.*, 198 F. App'x 87 (2d Cir. 2006). This is not a case of "[a] delay in processing paperwork that does not materially change the terms and conditions of a plaintiff's employment [and thus] is not an adverse employment action." *Williams v. New York City Hous. Auth.*, No. 03-CV-7764 (WHP), 2008 WL 2695139, at *3 (S.D.N.Y. June 29, 2008), *aff'd*, 361 F. App'x 220 (2d Cir. 2010). Rather, Individual Plaintiffs allege that they were promoted from one Union-represented position to a higher Union-represented position and performed the correct work under the correct title but without the correct pay. As alleged here, the purposeful withholding for the substantial periods of the higher salaries to which promoted employees were entitled was material and adverse to the terms of Individual Plaintiffs' employment. Accordingly, Plaintiffs have sufficiently pled an adverse employment action, with the exception of Plaintiff Armstrong, who suffered too short a processing delay to constitute an adverse action.

### C. Causal Connection to Protected Activity

Regarding the third prong of a First Amendment retaliation claim, Defendants argue that Plaintiffs fail to establish a causal connection between an adverse action and their Union membership. Mot. at 20–21; Reply at 5–6. The Court disagrees.

"To prevail on a First Amendment retaliation claim, a plaintiff must establish that protected speech was a but-for cause of some adverse employment action." *Morales v. City of New York*, No. 21-CV-925, 2022 WL 2840035, at *2 (2d Cir. July 21, 2022). "Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." *Id.* (internal citation omitted). "[A] plaintiff may not rely on conclusory assertions of retaliatory motive to satisfy the causal link. Instead, he must produce some tangible

proof to demonstrate that his version of what occurred was not imaginary." *Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir. 2004) (internal citations and quotation marks omitted).

Defendants argue that Individual Plaintiffs were Union members long before the alleged retaliation occurred, which breaks the chain of causation. Mot. at 20–21. Even assuming that Defendants were long *aware* of Individual Plaintiffs' Union membership, which Defendants do not argue, "temporal proximity" is only one example of acceptable "circumstantial evidence of a causal connection between a plaintiff's protected activity and a subsequent adverse action." *Thomas Castagna v. Scott M. Sansom et al.*, No. 21-CV-1663 (JAM), 2024 WL 197462, at *12 (D. Conn. Jan. 18, 2024). Plaintiffs purport to offer direct evidence of retaliatory animus, which also may suffice to establish causation, *see id.* at *10, but fail to identify any such evidence. Opp. at 22.

Another type of indirect or circumstantial evidence which may show retaliatory motive is that similarly situated co-employees were treated differently. *See Hicks v. Baines*, 593 F.3d 159, 171 (2d Cir. 2010); *Gronowski v. Spencer*, 424 F.3d 285, 295 (2d Cir. 2005). The comparators must be similarly situated to the plaintiff in all material respects, which means that there must be a reasonably close resemblance of the facts and circumstances of the adverse actions across the plaintiff's and comparators' cases. *See Radwan v. Manuel*, 55 F.4th 101, 132 (2d Cir. 2022).

Plaintiffs have pled that, for non-Union employees, including those hired for thirty-nine positions DEP posted in February 2022, there was no delay in processing the necessary paperwork such that those hires would be paid the proper salary. Defendants do not identify if or how these comparators are situated differently in material respects from Individual Plaintiffs other than their lack of Union affiliation. Moreover, Plaintiffs have alleged that Defendants offered Plaintiff Saha a promotion and the associated raise to an open position related to the

Rondout-West Branch Tunnel project in February 2022, but that Defendants retracted the promotion when they learned that Plaintiff Saha was a member of the Union; Defendants then hired Plaintiff Saha back to the same position they had previously retracted once Defendants no longer had pre-approved funding for the position.

Accepting these allegations as true, as the Court must at this stage, the Court finds that Plaintiffs have established a causal connection between an adverse action and their Union membership by means of comparison with similarly situated co-employees who were treated differently. Thus, all Plaintiffs except Plaintiff Armstrong have stated a claim for First Amendment retaliation.

## VI.    Selective Enforcement

Plaintiffs also seek to bring a claim for selective enforcement under the Equal Protection Clause of the Fourteenth Amendment. Opp. at 15. "If an equal protection claim merely restates a First Amendment retaliation claim, however, courts in the Second Circuit have dismissed the equal-protection claim as duplicative." *McKenna v. Nassau Cnty.*, No. 23-CV-4286 (ARR), 2023 WL 8455670, at *4 (E.D.N.Y. Dec. 6, 2023) (cleaned up). This is because "courts should not unnecessarily stretch sections of the Constitution to reach wrongs already covered by other sections." *Best Payphones, Inc. v. Dobrin*, 410 F. Supp. 3d 457, 484 (E.D.N.Y. 2019) (collecting cases in the Second Circuit dismissing equal protection claims that merely restate First Amendment claims). An equal protection claim merely restates a First Amendment retaliation claim when the only basis for alleged differential treatment is the same protected First Amendment activity on which the retaliation claim rests. *See id*. at 483–84; *McKenna*, 2023 WL 8455670, at *12.

Here, Plaintiffs state that both claims rely on identical facts. *See* Opp. at 19–20. Plaintiffs allege no reason for differential treatment or selective enforcement other than union membership, an associational right protected by the First Amendment. In other words, Plaintiffs have simply repackaged their First Amendment retaliation claim as an equal protection claim. Thus, the Court dismisses the equal protection claim as wholly duplicative of the First Amendment retaliation claim.

## VII.   Municipal Liability

Plaintiffs purport to bring claims against DEP. However, as an agency of the City of New York (already a named Defendant), DEP is not an entity that may be sued in its own name. *See* N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *see also El Dey v. Bd. of Correction*, No. 22-CV-2600 (LTS), 2022 WL 2237471, at *6 (S.D.N.Y. June 22, 2022) (DEP is not a suable entity). Accordingly, DEP is hereby dismissed as a defendant in this matter.

Plaintiffs purport to assert claims against Defendant Campbell, who they allege to be the Deputy Commissioner of DEP's Bureau of Organizational Development and Human Resources. FAC ¶ 15. To the extent Plaintiffs seek to sue Defendant Campbell in her official capacity, the Court dismisses the official capacity claim and construes Plaintiffs as asserting a claim against the City pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *See Brown v. Long Island R.R.*, No. 18-CV-6459 (AMD), 2023 WL 6385163, at *8 (E.D.N.Y. Sept. 29, 2023) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)) (collecting cases) ("A suit against an individual in his official capacity is "to be treated as a suit against the entity [of which an officer

is an agent].”). The Court discusses Defendant Campbell’s liability in her individual capacity in Section VIII.

Plaintiffs bring *Monell* claims against the City for violations of procedural due process and the First Amendment, the surviving constitutional claims. *See Reyes v. Cnty. of Suffolk*, 995 F. Supp. 2d 215, 231 (E.D.N.Y. 2014) (recognizing the viability of *Monell* claim based on procedural due process); *Welch v. City of Peekskill*, No. 21-CV-07230 (PMH), 2024 WL 167271, at \*4 (S.D.N.Y. Jan. 15, 2024) (recognizing the viability of *Monell* claim based on First Amendment retaliation). However, the Court dismisses these claims without prejudice for the reasons stated below.

A claim for municipal liability under Section 1983 requires a plaintiff to “plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.” *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)). A plaintiff may satisfy the “policy or custom” requirement by alleging one of the following:

> (1) [A] formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (internal citations omitted); *see also Patterson v. County of Oneida*, 375 F.3d 206, 226–27 (2d Cir. 2004) (describing methods of establishing *Monell* liability).

“At the pleading stage, a plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists.” *Rodriguez v. City of*

*New York*, No. 15-CV-07945, 2018 WL 1276826, at *6 (S.D.N.Y. Mar. 9, 2018) (internal citation and quotation marks omitted). "[B]oilerplate statements that county employees were acting in accord with a municipal policy, with no facts to support those statements, are not sufficient to support a *Monell* claim." *Thomas v. Town of Lloyd*, No. 21-CV-1358, 2024 WL 118939, at *10 (N.D.N.Y. Jan. 11, 2024) (internal citation omitted). Moreover, a plaintiff must establish a causal link between the municipality's policy, custom or practice and the alleged constitutional injury. *See City of Okla. v. Tuttle*, 471 U.S. 808, 824 n.8 (1985) ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a constitutional violation. There must at least be an affirmative link between[, for example,] the training inadequacies alleged, and the particular constitutional violation at issue.").

The Court has already found that Plaintiffs plausibly alleged violations of their procedural due process and First Amendment rights; however, as previously discussed, *see supra* Sections III–IV, Plaintiff Armstrong fails to allege that he suffered constitutional violations, and therefore also cannot state a *Monell* claim.

With respect to the policy or custom prong of *Monell*, Plaintiffs allege that the City has or had a *de facto* policy of refusing to timely process the necessary paperwork for Union employees of DEP to receive their appropriate salary after promotions, whereas the same paperwork was promptly finalized for similarly situated non-Union hires in the same time period. Opp. at 5. The Court understands that Plaintiffs seek to assert a "consistent and widespread" practice pursuant to the third prong of *Brandon*. 705 F. Supp. 2d at 276–77. "To demonstrate a *de facto* policy or custom through a widespread practice, a plaintiff must show that the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively

27

ratifying the actions." *Douglas v. City of Peekskill*, No. 21-CV-10644 (KMK), 2023 WL 2632217, at *8 (S.D.N.Y. Mar. 24, 2023) (internal citation and quotation marks omitted). To plead the existence of such a widespread practice, "a plaintiff must allege more than one instance of a constitutional violation" and "typically must also adequately plead similar incidents involving others." *Iosilevich v. Walmart Inc.*, No. 22-CV-4757 (VB), 2024 WL 168283, at *6 (S.D.N.Y. Jan. 12, 2024); *see also Rivera v. Putnam Cnty.*, No. 22-CV-1877 (VB), 2023 WL 3601720, at *8 (S.D.N.Y. May 23, 2023) (same); *Fuentes v. Schemmer*, No. 18-CV-08207 (PMH), 2023 WL 188739, at *14 (S.D.N.Y. Jan. 13, 2023) (collecting cases dismissing *Monell* claims where plaintiff only described her own experiences).

"[T]he mere assertion that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially" an inference that supervisory authorities were aware of an unconstitutional practice due to its widespread nature. *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (internal citation omitted). There are, however, "numerous examples from within the Second Circuit in which the district court allowed a *Monell* claim to survive [a motion to dismiss] where the [p]laintiff alleged only a few examples of similar misconduct." *DiPippo v. Cnty of Putnam*, No. 17-CV-7948, 2019 WL 1004152 at *10 (S.D.N.Y. Feb. 28, 2019) (collecting cases). A *Monell* claim based on a widespread custom or policy "must be context-specific and cannot be reduced to an overly simplistic analysis of the number of instances alleged." *Id*. at *9. The Court's main concern at this stage "is to vet credible claims and ensure that a plaintiff has pleaded enough facts to show that a [municipality] was *aware* of pattern or custom and acquiesced to unconstitutional conduct." *Id*. (emphasis in original). "[T]he pre-discovery pleading standard for a custom or practice is not a high bar." *Id*.

Plaintiffs have not alleged enough facts to support an inference that the complained-of actions were pursuant to a widespread practice. Plaintiffs allege that the City refused to timely process the necessary paperwork for Union employees of DEP to receive their appropriate salary after promotion, whereas the same paperwork was promptly finalized for similarly situated non-Union hires in the same time period, including those hired for thirty-nine positions DEP posted in February 2022. Plaintiffs allege that Defendants offered Plaintiff Saha a promotion, and the associated raise, to an open position related to the Rondout-West Branch Tunnel project in February 2022, but that Defendants retracted the promotion when they learned that Plaintiff Saha was a member of the Union; Defendants then hired Plaintiff Saha back to the same position they had previously retracted once Defendants no longer had pre-approved funding for the position.

Courts have permitted *Monell* claims alleging a widespread practice to survive at the motion to dismiss stage where a plaintiff pled similar examples of misconduct – beyond the plaintiff's own experiences – from which it could be inferred that the municipality had prior notice of the unlawful conduct. *See id*. at *10 (plaintiff stated *Monell* claim based on example of similar misconduct apart from his own case); *Tirado v. City of New York*, No. 19-CV-10377 (LAK) (SN), 2021 WL 11646299, at *10 (S.D.N.Y. Jan. 25, 2021) (plaintiff stated *Monell* claim based on widespread practice where plaintiff alleged five examples of similar unconstitutional activity); *Osterhoudt v. City of New York*, No. 10-CV-03173 (RJD), 2012 WL 4481927, at *1 (E.D.N.Y. Sept. 27, 2012) (accepting additional allegations of similar unconstitutional conduct cited by the plaintiff in order to establish, for motion to dismiss purposes, municipal liability); *Jimenez v. City of New York*, No. 18-CV-7273 (LGS), 2020 WL 1467371, at *6 (S.D.N.Y. Mar. 26, 2020) (finding plaintiff's "allegations are sufficient to show a policy or custom . . . based on multiple incidents alleged by Plaintiff" of similar unconstitutional conduct). Here, Plaintiffs do

not plead any examples of similar misconduct outside of their own experiences; thus, Plaintiffs have not stated a *Monell* claim on a theory of widespread practice.

Plaintiffs have not argued the FAC states a policy or custom with respect to one of the other prongs of *Monell*. *See Brandon*, 705 F. Supp. 2d at 276–77. However, having found that Plaintiffs plausibly alleged violations of their procedural due process and First Amendment rights, the Court is mindful not to lightly extinguish possible *Monell* claims arising out of those violations where an amended complaint may cure the pleading deficiencies. Thus, the Court dismisses Plaintiffs' *Monell* claims without prejudice.

## VIII.   Personal Involvement of Defendant Campbell Under Section 1983

To the extent Plaintiffs seek monetary damages against Defendant Campbell in her individual capacity for constitutional violations pursuant to Section 1983, they must demonstrate that she was personally involved in depriving Plaintiffs of their constitutional rights. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Grullon v. City of New Haven*, 720 F.3d 133, 138–39 (2d Cir. 2013) (collecting cases). To establish such liability, Plaintiffs must show that Defendant Campbell, "through [her] own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). A plaintiff may establish personal involvement by showing that: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to [constitutional rights] by failing to act on information indicating that

unconstitutional acts were occurring." *Grullon*, 720 F.3d at 138 (2d Cir. 2013) (cleaned up). In the context of Section 1983 supervisory claims, a plaintiff "must demonstrate both that the defendant was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that the defendant also drew the inference.'" *Elting v. Lassiter*, No. 22-CV-8573 (PGG), 2023 WL 8699454, at *5 (S.D.N.Y. Dec. 14, 2023) (quoting *Tangreti*, 983 F.3d at 619) (cleaned up).

The brief and conclusory allegations in the FAC regarding Defendant Campbell fail to establish her personal involvement for purposes of Section 1983 liability. Plaintiffs conclusorily state, with no accompanying allegations, that "Defendant Campbell has ultimate responsibility and discretion and has set the policies in place for all the violative conduct alleged in this Complaint." FAC ¶ 15. Such a lone conclusory allegation cannot sustain a claim of personal involvement. *See Taranto v. Putnam Cnty.*, No. 21-CV-2455 (KMK), 2023 WL 6318280, at *14 (S.D.N.Y. Sept. 28, 2023) (internal citaiton omitted) ("While personal involvement of a supervisor may be established by showing that he created a policy or custom under which the violation occurred, conclusory allegations that a defendant was involved in the creation and enforcement of unconstitutional policies cannot sustain a claim of personal involvement."). Plaintiffs are warned that such barebones pleading will not pass muster. For the reasons explained in Section XI, Plaintiffs will be permitted another opportunity to amend their Complaint to attempt to cure this deficiency; thus, the Court dismisses the constitutional claims as to Defendant Campbell without prejudice.

## IX.    Qualified Immunity

Defendant Campbell also asserts a qualified immunity defense. Mot. at 17. While "advancing qualified immunity as grounds for a motion to dismiss is almost always a procedural

mismatch," *Chamberlain v. City of White Plains*, 960 F.3d 100, 110 (2d Cir. 2020), the Court reserves judgment on the issue of qualified immunity, as the question is academic if Plaintiffs cannot adequately plead personal involvement under Section 1983.

**X.      Standing of Local 3599 to Sue**

Defendants argue, but appear to abandon in reply, that Local 3599 fails to plausibly claim that it has suffered injury in fact as a separate party. Mot. at 7. There are two ways in which an organization can have standing to sue: (1) organizational standing, which enables an organization to sue on its own behalf to seek relief from injuries it has itself suffered, or (2) associational standing, which enables an organization to sue on behalf of its members, who must themselves have standing to bring the suit individually. *See N.Y. C.L. Union v. New York City Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012); *Fac. v. New York Univ.*, 11 F.4th 68, 75 (2d Cir. 2021).

Associational standing – where the organization brings suit only as a representative of its members – does not require the organization to have itself suffered any injury. *See Young Am.'s Found. v. Stenger*, No. 20-CV-822 (LEK), 2023 WL 3559619, at *21 (N.D.N.Y. May 19, 2023) (associational standing is an exception to the injury in fact requirement for Article III standing). Defendants have at no point disputed that the Union has associational standing to sue on behalf of its members or that Individual Plaintiffs have standing; thus, the issue of associational standing merits no further discussion at present. *See Kwong v. Bloomberg*, 723 F.3d 160, 162 n.4 (2d Cir. 2013) (declining to address associational standing issue where individual plaintiffs had standing); *Coughlin v. New York State Unified Ct. Sys.*, No. 22-CV-4002 (FB), 2023 WL 7091904, at *4 n.6 (E.D.N.Y. Oct. 26, 2023) (same). Because the Union satisfies associational standing, the Court need not address organizational standing at this time.

**XI.    Leave to Amend**

Federal Rule of Civil Procedure 15(a) provides that if a party has already "amend[ed] its pleading once as a matter of course," as Plaintiffs have here, it "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1)–(2). A court should "freely give leave when justice so requires," *id.*, but it may, in its discretion, "deny leave to amend for 'good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (quoting *Bensch v. Est. of Umar*, 2 F.4th 70, 81 (2d Cir. 2021)). The Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)." *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) (affirming denial of leave to amend).

Plaintiffs have already amended their complaint once after Defendants' first motion to dismiss. *See* ECF Nos. 17, 27. In their opposition to the instant motion, Plaintiffs cursorily seek leave to amend again if the Court finds any of their claims lacking, without specifying how they would cure the pleading deficiencies in the FAC. Opp. at 25. The Court would be on firm footing to deny such leave. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (leave to amend may be denied when the plaintiff "fails to specify . . . how amendment would cure the pleading deficiencies in its complaint"); *Gregory v. ProNai Therapeutics Inc.*, 757 F. App'x 35, 39 (2d Cir. 2018) (affirming denial of leave to amend where "plaintiffs sought leave to amend in a footnote at the end of their opposition to defendants' motion to dismiss" and "included no proposed amendments"); *Indiviglio v. B&G Foods, Inc.*, No. 22-CV-9545 (VB), 2023 WL 9022866, at *8 (S.D.N.Y. Dec. 29, 2023) (denying leave to amend complaint where "plaintiff has not submitted a proposed amended complaint, identified any basis for amendment,

specified how an amendment would cure the complaint's pleading deficiencies, or set forth any additional facts she intends to allege"); *Kerilee Crianza, v. Holbrook Plastic Pipe Supply, Inc. et al.*, No. 22-CV-07685 (HG), 2024 WL 216696, at *5 (E.D.N.Y. Jan. 19, 2024) ("The fact that Plaintiff's opposition brief provides no explanation about how she intends to amend her Complaint is sufficient reason by itself to deny leave to amend.").

In particular, Plaintiffs were on notice of their deficient pleading with respect to the personal involvement of Defendant Campbell in constitutional violations by means of Defendants' first motion to dismiss, *see* ECF No. 18 at 14, yet did nothing to cure such deficiencies in the FAC. Plaintiffs are warned that, absent extraordinary circumstances, the Court will not grant leave for further amendment with respect to deficiencies of which they are already on notice. *See Env't Sols. Assocs. Grp., LLC v. Conopoco, Inc.*, No. 20-CV-10699 (MKV), 2021 WL 2075586, at *3 (S.D.N.Y. May 24, 2021).

Nonetheless, the Court finds that amendment as set forth below would not be futile or in bad faith, nor would it cause undue delay or prejudice to Defendants given the early stage of the litigation. *See id.* ("The Court also finds no undue delay by Plaintiff and prejudice to Defendant from permitting amendment at this early stage in the litigation. There is no undue delay as Plaintiff's request for leave was filed in response to Defendant's motion to dismiss."). Plaintiffs are granted leave to file a second amended complaint to flesh out (1) the personal involvement of Defendant Campbell in the alleged constitutional violations and (2) the existence of a municipal policy or custom that was the moving force behind said constitutional violations (*see infra* Section VII for deficiencies in *Monell* pleading). Moreover, Plaintiffs are permitted to add factual details to flesh out their existing claims, and to reorganize their claims with greater clarity and precision, but they may not add any new causes of action not included in the FAC or discussed

34

herein. Plaintiffs are reminded that barebones or conclusory pleading will not pass muster under *Twombly*.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Plaintiffs' substantive due process and selective enforcement claims, and all of Plaintiff Armstrong's constitutional claims, are DISMISSED. DEP is also DISMISSED as a defendant, as are any official capacity claims against Defendant Campbell. Plaintiffs' *Monell* claims, and constitutional claims with respect to Defendant Campbell, are DISMISSED without prejudice. Plaintiffs' application for leave to file a second amended complaint is GRANTED as set forth in Section XI.

The stay of discovery in effect pending disposition of the instant motion, *see* ECF Nos. 37 and 41, is hereby ADJOURNED. The deadline for Plaintiffs to file a second amended complaint in compliance with this order is **March 27, 2024.** The parties are directed to submit a joint status letter no later than **April 10, 2024**, after receipt of which the Court will schedule an initial pretrial conference.

The Clerk of Court is directed to terminate ECF No. 32.

Dated:  March 6, 2024
        New York, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge